**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 01-20298
_____


ASSOCIATED INTERNATIONAL INSURANCE COMPANY,

Plaintiff-Counter Defendant-Appellee,

VERSUS


BOYD BLYTHE, ET AL.

Defendants,

BOYD BLYTHE; CHRISTOPHER SHAWN WOOD,
Individually and as Representative of Slade Zacharia Wood,

Defendants-Counter Claimants-Appellants.

Appeals from the United States District Court
for the Southern District of Texas, Houston Division

March 22, 2002

Before DAVIS, WIENER and BARKSDALE, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

The question we must decide in this case is how broad a meaning we should attribute to the phrase "using with your permission the covered auto" in an automobile liability policy. The district court concluded that a person to whom general custody of a vehicle was given was not an omnibus insured and therefore not covered when he negligently entrusted the vehicle to another person whose negligent operation caused injury. We disagree and reverse and remand.

1

I.

In 1998, RNC, a corporation providing construction services to the communications industry, contracted to perform work for Phonoscope, Inc., a Texas-based cable television company ("Phonoscope"). The work consisted of hanging fiberoptic cable television wire on utility poles in the Houston area (the "Phonoscope job"). RNC in turn hired Blythe, a non-employee contract laborer. RNC authorized Blythe to recruit and supervise a four man crew to work on the Phonoscope job. RNC provided a truck to be used in performing the work. The truck was equipped with a bucket, that could be raised and lowered, and was large enough to hold one man. RNC informed Blythe that its insurers would not permit him to operate the RNC truck because of his driving record. It was understood that one of the men in Blythe's crew would actually operate the vehicle.

RNC provided Phonoscope with evidence of a commercial automobile liability insurance policy issued to RNC by Progressive County Mutual Insurance (the "Progressive Policy"). The Progressive Policy covered bodily injury and property damages in the amount of $1,000,000 per accident. RNC was the named insured. In addition, the Progressive Policy extended coverage in an omnibus clause to "[a]nyone else while using with [RNC's] permission a covered auto."[1] The policy specifies that it covers all bodily injury and property damage "caused by an accident and

---

[1] The persons covered by the policy were defined as follows:
1.      WHO IS AN INSURED
        The following are insured:
        a..     You [RNC] for any covered auto.
        b.     Anyone else while using with your permission a covered auto you own, hire or borrow except [circumstances not here applicable].

resulting from the ownership, maintenance or use of a covered auto."[2]  RNC also obtained an excess insurance policy for the truck from Associated. The Associated Policy covered up to $2,000,000 per occurrence.  Coverage under the Associated Policy was triggered only when coverage under the Progressive Policy had been exhausted.  The Associated Policy, as a "following form" policy, adopted the coverage provisions and definitions of the underlying Progressive Policy.

On April 24, 1998, Blythe's crew was hanging cable television wire using RNC's truck. Blythe gave one of the crew members, George Eason ("Eason"), the keys to drive the truck.  At the time of the accident, Eason was driving the truck and Wood, another member of Blythe's crew, was in the raised bucket.  Blythe was not present at the job site.  At Wood's request, Eason moved the truck to allow Wood to get closer to a utility pole.  Unfortunately, the bucket of the truck hit power lines, causing a fire which severely burned Wood on over two-thirds of his body.

Wood brought suit in state court against Phonoscope, RNC, Blythe and Eason.  RNC obtained summary judgment in its favor.  Eason was defended by Associated and Progressive. Blythe was not offered counsel by either Progressive or Associated and represented himself *pro se*.  Under standard Texas legal instructions pertaining to negligence claims, the jury found Blythe 60% negligent, Eason 28% negligent and Wood 12% negligent.  The jury awarded Wood total damages of $4,175,000, exclusive of interest and costs, and awarded $10,000 to Wood's minor son, Slade Zacharia Wood, for loss of parental consortium.

---

[2] The scope of liability coverage was defined as follows:

A.    COVERAGE
    We will pay all sums an insured legally must pay as damages because of bodily injury . . . to which this insurance applies, caused by an accident resulting from the ownership, maintenance or use of a covered auto.

3

Approximately two months after the jury rendered its verdict in the Wood Suit, Blythe claimed coverage under the Progressive Policy and the Associated Policy. Associated reacted to this demand by filing suit against Blythe and Wood for declaratory judgment in federal court. Associated sought a declaration that Blythe is not covered under the Associated Policy and that Wood is not entitled to any payment under the Associated Policy for Blythe's liability. Blythe counterclaimed, seeking declaratory judgment that he is covered under the Associated Policy and alleging other various contract and tort claims. Both parties moved for partial summary judgment on the issue of whether Blythe is covered by the Associated Policy.

The district court granted Associated's motion for summary judgment. It concluded that Blythe was not an insured under the omnibus clause of the Policy because he was not present at the work site when the accident occurred and therefore was not "using" the vehicle. It rejected Blythe's theory that the negligent entrustment claim against him establishes his "use" of the truck when it injured Wood. Accordingly, the court held that Associated had no duty to defend or indemnify Blythe for the liability incurred as a result of the Wood suit. Because the district court held that Associated had no duty to defend Blythe, it concluded that Blythe's extra-contractual claims, for injuries arising out of Associated's failure to tender a defense in the Wood suit, must also fail. Accordingly, it dismissed Blythe's counter claim and entered final judgment. Blythe and Wood appeal.

II.

This case is on appeal from the district court's decision on Motions for Summary Judgment and subsequent dismissal of Blythe's counterclaims. We review a grant of summary

4

judgment *de novo*.[3]  Also, the only issue decided by the district court involved construction of Associated's policy, a question of law, which we also review *de novo*.[4]

III.

The question we must decide is whether, under the facts of this case, Blythe was "using" the covered vehicle and therefore qualifies as an omnibus insured so as to be entitled to defense and indemnity under the terms of the omnibus clause of Associated's policy.  The facts are undisputed and both parties agree that Blythe can only be covered under the Associated Policy as a "permissive user" under the omnibus clause, which provides coverage to "[a]nyone else while using with [RNC's] permission a covered auto."

The parties have cited no decision of the Texas Supreme Court that resolves this question. Accordingly, in deciding this case, this court sitting in diversity must apply Texas law, using its best judgment as to what the Texas Supreme Court would do if presented with the same case.[5] "When making an Erie-guess in the absence of explicit guidance from the state courts, we must attempt to predict state law, not to create or modify it."[6]  In the absence of Texas Supreme Court guidance, this court defers to the holdings of lower Texas appellate courts.[7]  Although no Texas case clearly answers this question, no Texas case precludes recovery by Blythe and many include

---

[3]  Daniels v. City of Arlington, 246 F.3d 500, 502 (5th Cir. 2001).

[4]  American States Ins. Co. v. Bailey, 133 F.3d 363, 369 (5th Cir. 1998).

[5]  Farm Credit Bank v. Guidry, 110 F.3d 1147, 1149 (5th Cir. 1997).

[6]  United Parcel Service, Inc. v. Weben Industries, Inc., 794 F.2d 1005, 1008 (5th Cir. 1986).

[7]  Hamilton v. Segue Software, Inc., 232 F.3d 473, 479 (5th Cir. 2000), quoting United States v. Johnson, 160 F.3d 1061, 1063 (5th Cir. 1998).

5

language that supports his position. Based on our review of decisions by Texas courts and courts in other jurisdictions, we conclude that the Texas Supreme Court would follow the weight of jurisprudence which would extend coverage under the omnibus clause to Blythe as a user of RNC's vehicle.

We begin our review of Texas law with the understanding that the Texas Supreme Court has defined "use" in this context broadly. The court in Leleux v. Hamshire-Fannett Ind. School Dist. made clear that "use" is broader than "operation" and includes putting or bringing a thing into action or service and employing a thing for or applying a thing to a given purpose.[8] In contrast "operation" is defined as "a doing or performing of a practical work."[9]

Blythe's central argument is that, although he was not permitted to drive the truck, RNC entrusted him with the vehicle to use it to accomplish the Phonoscope job. When Blythe entrusted the operation of the truck to Eason, he was putting the truck into service to perform the task assigned to him by RNC, the vehicle owner and named insured. He argues that his entrustment of the vehicle to Eason constitutes "use" of the vehicle. Given RNC's instructions prohibiting him from operating the vehicle, Blythe argues that RNC necessarily understood that he would be required to entrust its operation to members of his crew to do the work. At the time of the accident, the vehicle was being operated to perform RNC's work and its use was within the scope of RNC's permission which should constitute "use" by him.

---

[8] Leleux v. Hamshire-Fannett Ind. School Dist., 835 S.W.2d 49, 51 (Tex. 1992) (quoting Mt. Pleasant Independent. School Dist. v. Estate of Lindburg, 766 S.W.2d 208, 211 (Tex. 1989) (A school bus was not in use related to a claim brought by a school girl who hit her head on the school bus door.)

[9] Id.

6

The Texas Supreme Court case of <u>Snyder v. Allstate Ins. Co.</u> lends some support to Blythe's argument.[10] <u>Snyder</u> addressed, among other issues, coverage of a person driving an insured vehicle with the permission of the first permittee of the named insured under an Allstate vehicle policy. The Allstate policy listed J. B. Rhodes as the named insured. Mr. Rhodes purchased the insured vehicle for the use of his daughter Darla. At the time of the accident, the vehicle was being driven by Robert Snyder at the request of Darla with Darla as a passenger. The medical payment provision under that policy covered the named insured and "any other person who sustains bodily injury, caused by accident, while occupying the owned automobile, while being used by the named insured . . . or <u>by any other person with the permission of the named insured</u>.. . ."[11] Noting that this coverage was as broad as the liability coverage under the policy, the court concluded that Snyder was a person occupying the owned automobile "while <u>it was being used by Darla Rhodes</u> with the permission of her father, the named insured" and found coverage.[12] This language supports Blythe's argument that the original permittee–at least while she is a passenger in the vehicle–continues to be a "user" of the vehicle while it is being driven by another within the scope of the first permittee's permission. Associated seeks to distinguish <u>Snyder</u> on the basis that the first permittee, Darla Rhodes, was a passenger in the car at the time of the accident and Blythe was not in RNC's vehicle at the time of the accident. However, the Texas Supreme Court did not rely on this fact or recite any facts indicating that Darla was giving instructions to the driver or otherwise exerting control over the driver.

---

[10] 485 S.W.2d 769 (Tex. 1972).

[11] <u>Id</u>. at 772 (underlining added).

[12] <u>Id</u>. (Emphasis added.)

7

A decision by the Texas Court of Civil Appeals also supports Blythe's argument. In Phoenix Ins. Co. v. Allstate Ins. Co., the named insured loaned his car to a local pastor for the purpose of driving church members to an event.[13] The pastor, after picking up the car and the church members, asked to be dropped off at his rectory and entrusted the driving of the car to one of the church members. This second permittee was driving when the accident occurred. The issue in the case was coverage for the driver, not the pastor who was the original permittee, under an omnibus clause. However, the court stated:

> During this entire trip, from the time when the car was first picked up by James DeLane [the driver] to and including the occurrence of the accident, Father Stiles in his capacity as assistant pastor and Youth director was "using" the car for the purpose for which it had been loaned by the named insured. Although he was not in the car at the time of the accident, it was still being used by him for his benefit and under his express instructions.[14]

Neither party cites cases decided by Texas courts indicating that those courts would accept Associated's narrow construction of "Use" in the omnibus clause of the policy. Although the facts and issues presented in the Texas cases discussed above do not exactly match this case, these decisions indicate to us that a Texas court would likely accept Blythe's interpretation of this clause and hold that he is entitled to coverage under Associated's policy.

Our conclusion that a Texas court would accept Blythe's interpretation of the policy is buttressed by jurisprudence from other jurisdictions and commentary on insurance law. These sources unanimously support Blythe's position. Some of the commentary has been relied on by Texas courts. For example, in United Services Auto. Asso. v. Stevens, the named insured left his

---

[13] 412 S.W.2d 331 (Tex. Civ. App. Corpus Christi, 1967)(no writ).

[14] Id. at 336.

truck at an automobile dealership for a salesman to sell on a commission basis.[15]  The dealer

allowed Mr. Stevens to take the vehicle home to try out.  Mr. Stevens allowed his daughter, an

unlicensed driver, to operate the vehicle and she collided with another vehicle.  The principal issue

presented to the court was whether Mr. Steven's daughter (the second permittee) had permission

to operate the vehicle.  The court adopted the following test from 7 Am. Jur. 2d Automobile

Insurance § 117 (1963), which states:

> The "general rule' that a permittee may not allow a third party to "use" the named
> insured's car has generally been held not to preclude recovery under the omnibus
> clause (1) where the original permittee is riding in the car with the second
> permittee at the time of the accident, or (2)  the second permittee, in using the
> vehicle, is serving some purpose of the original permittee.  The courts generally
> reason that under such circumstances the second permittee is "operating" the car
> for the "use" of the first permittee and that such "use" is within the coverage of the
> omnibus clause.[16]

In Phoenix v. Allstate discussed above, the court considered several secondary materials,

including an annotation at 4 A.L.R. 3rd 10 entitled "Omnibus Clause of Automobile Liability

Policy As Covering Accidents Caused by Third Person Who is Using Car with Consent of

Permittee of Named Insured." The author of this annotation summarizes decisions on coverage of

the original permittee and second permittee under omnibus clauses.  In a statement of general

principle regarding coverage as to the original permittee, the annotation states "The omnibus

clause of the named insured's automobile liability insurance policy has generally been held to

---

[15]  596 S.W.2d 955 (Tex. Civ. App. Amarillo 1980).

[16] Id. at 959.  (The issues in this case were whether there was sufficient evidence to establish that Mr. Stevens and his daughter were using the vehicle with the implied consent of the named insured and whether Mr. Stevens could delegate permission to use the car to his daughter, an unlicensed driver.  The named insured had left the car at a truck dealership to allow one of the salespeople to sell it on his behalf on a commission basis.)

protect an original permittee as to liability arising from the operation of the car by a third person with his consent where the named insured expressly authorized the first permittee to delegate his right of use to other persons."[17]  Under this rule, Blyth as the original permittee would be covered under Associated's omnibus clause because RNC, the named insured, authorized and even required Blyth to delegate the right to use the vehicle to members of his crew.[18]

Case law from other jurisdictions is consistent with this conclusion.  See for example,

---

[17]  4 A.L.R. 3rd 10, § 4.  See also, 4 A.L.R.3rd 10, § 5, which states "An original permittee having express authority from the named insured to allow others to use or drive the automobile has been afforded protection under the omnibus clause as to liability arising from its operation by a third person with his consent."

[18] Several of the cases cited under that annotation address fact situations similar to those presented in this case with holdings consistent with the general rule stated above.  In Hawkeye Casualty Co. v. Rose, 181 F.2d 157 (8th Cir. 1950), the defendant David Rose had purchased an automobile titled in the name of his wife Bell Rose.  Bell Rose was the named insured on their automobile liability policy.  The vehicle was stolen and later recovered Brooklyn, New York.  At the time, Bell Rose was seriously ill and delegated authority to reclaim the vehicle to her husband who arranged for the Stanley and Lillian Schwartz to obtain possession of the vehicle from the New York police and drive it back to their home in Kansas City.  The Schwartz were injured in an accident in the vehicle while in route and sued David Rose for failing to disclose latent defects in the vehicle.  Among other findings, the trial court found that David Rose was "using" the automobile.  The Eighth Circuit found that to be a permissible construction of the omnibus clause and affirmed.  In Osborne v. Security Ins. Co., 318 P.2d. 94 (Cal. App. 2d Dist. 1957), a mother was the named insured of an automobile which was owned by her son and the son had permission to use the car and to allow his friend, plaintiff Osborne, to use the car.  The son, the original permittee, was found to be covered under the omnibus clause for damages incurred when Osborne was in an accident in the insured automobile.  In both Rose and Osborne, the omnibus clauses contained a provision covering any person "legally responsible" for the use of the automobile in addition to any person "using" the automobile.  In both cases, the courts found that the original permittee was covered under both theories. See Rose at 159, Osborne at 99.  In American States Ins. Co. v. Angstman Motors, Inc., 343 F. Supp. 576 (D. Mont. 1972), Angstman Motors loaned a truck to Johnson on trial.  Johnson intended to purchase it.  Johnson assigned Hearn, one of his hands, to drive the truck.  Hearn, an unlicenced driver, was involved in an accident.  The court found that Johnson, the original permittee, was covered under the omnibus clause in Angstman's policy.  The clause covered both use and operation of the vehicle so long as they were within the scope of the permission of the named insured.

Grange Ins. Assoc. v. Ochoa, 691 P.2d 248 (Wash. App. 1984) (Where employee was permitted to drive employer's pickup truck in connection with the business and for his personal use, employee was "using" the pickup with employer's permission and would be an insured under the employer's policy in relation to an accident while his uninsured son was driving alone in the vehicle, if the use by his son was for a business or family purpose); and Bats, Inc. v. Shikuma, 617 P.2d 575 (Haw. Ct. App. 1980)(Named insured who rented a vehicle was "using" the rented van when it was involved in a collision and thus covered under the his policy, even though he was not in the van as the van was being driven by his friend on his behalf to return the van to the rental office.)   It is particularly telling that Associated fails to cite any case holding that the original permittee in Blythe's position is not covered by the omnibus clause for injuries caused by a second permittee while using the insured vehicle with his permission.

Based on Woodrich Constr. Co. v. Indemnity Ins. Co., Associated argues that a person claiming additional insured status under an omnibus clause must have actual control over a vehicle in order to be considered "using" the vehicle.  In Woodrich, a general contractor was found to be covered under an omnibus clause for damages resulting from an accident which occurred while he was directing the movement of the insured vehicle.[19]  We do not read this case as requiring actual control or direction as a prerequisite to coverage.  The great weight of authority as reviewed above is otherwise.  In discussing the concept of "use," the Woodrich court notes that

> The *use* of a motor vehicle does not require that the *user, or the user's agent*, be
> its actual operator. It is common knowledge that the use of a motor vehicle may be
> furnished by the owner to another with or without a driver. Many decisions have in
> effect recognized *use* as going beyond the narrow meaning of the direct mechanical
> operation performed by the driver and as encompassing the broader concept of

---

[19]  89 N.W. 2d 412 (Minn. 1958).

11

employing or putting the vehicle into one's service by an act which assumes at any time -- with the consent of the owner or his agent -- the supervisory control or guidance of its movements.[20]

Associated also relies on Great American Ins. Co. v. General Accident Fire & Life Assur. Corp., a case from this circuit.[21] In Great American, a power company hired a tree surgeon to remove and transplant trees that were encroaching on power lines. The tree surgeon supplied the truck and personnel to do the work. A worker employed by the tree surgeon was injured when a palm tree he was transplanting made contact with the power company's high voltage line. The injured employee sued the power company, which claimed it was an omnibus insured under the tree surgeon's auto liability policy. This court concluded that the power company was not an omnibus insured because it was not a permissive user of the truck and had no legal responsibility for the truck. We do not find this case helpful in analyzing today's case. We find no indication from the facts recited in the opinion that the power company had any relationship of any kind with the insured vehicle, except that it was owned and operated by a contractor. The court correctly treated the power company as a "stranger" to the insurance contract.[22] Because the power company was not entrusted with the use or operation of the insured vehicle, it is not difficult to see why the court found that the power company was not a permissive user of the vehicle. Blythe's relationship to RNC and the vehicle obviously presents a different factual and legal scenario.

In summary, all of the case law from Texas while not conclusive, tends to support Blythe's

---

[20] Id. at 418.

[21]  321 F.2d 948 (5th Cir. 1963).

[22]  Id. at 950.

position on coverage. Insurance law commentary and cases from other jurisdictions we have discovered unanimously support Blythe's position and Associated cites no case law to the contrary.

IV.

Based on our review of the case law in Texas and in other jurisdictions, we conclude that under the allegations of Associated's complaint, Associated had a duty to defend Blythe. As Blythe has already been adjudicated liable to Wood in the Wood Suit, Associated also has a duty to indemnify Blythe. The district court's order dismissing Blythe's and Wood's extra-contractual claims against Associated solely as a consequence of the district court's conclusion on the coverage issue must also be reversed and those claims are remanded for trial.

Accordingly, the district court's judgment is REVERSED and REMANDED.