[No. 23837. Department One. July 21, 1932.]

J. R. CYPERT *et al., Respondents*, v. DOROTHY ROBERTS *et al., Defendants*, GENERAL CASUALTY COMPANY OF AMERICA, *Appellant.*[1]

*Ralph S. Pierce*, for appellant.
*Hayden, Metzger & Blair*, for respondents.

MITCHELL, J.—A coupe automobile belonging to Nalley's, Inc., a corporation, of Tacoma, driven by Miss Dorothy Roberts, collided with another automobile. The actions of *Mitchell v. Nalley's, Inc.*, 163 Wash. 183, 300 Pac. 526, *Cypert v. Nalley's, Inc.*, 163 Wash. 703, 300 Pac. 528, and *Parker v. Nalley's, Inc.*, 163 Wash. 703, 300 Pac. 529, arose out of the collision. The plaintiffs in each of those cases sued the driver and the owner of the car for damages alleged to have been caused by the negligence of the driver. In each case, there was a verdict against both defendants upon which a judgment was entered against Miss Roberts, while as

[1]Reported in 13 P. (2d) 55.

to Nalley's, Inc., the verdict was set aside because of failure of proof and judgment entered dismissing the action as to it. The plaintiffs in each of those cases appealed from the judgment in favor of Nalley's, Inc., with the result of an affirmance of the judgment.

In the case of J. R. Cypert and Julia Cypert, his wife, v. Roberts and Nalley's, Inc., the judgment against Miss Roberts not being paid, the judgment creditors sued out a writ of garnishment against and served it upon the General Casualty Company of America, a corporation. Answering the writ, that corporation alleged that, at the time the writ was served and at the time of making answer, it was not indebted to Dorothy Roberts; had no effects belonging to her; and that she owned no stock in the corporation. The answer was controverted by the judgment creditors to the effect that the garnishee defendant had issued, and that there was outstanding at the time of the collision referred to, an insurance policy that covered the liability of Dorothy Roberts to the plaintiff.

Upon these issues, a trial by jury resulted in a verdict for the plaintiffs upon which judgment was entered against the garnishee defendant, General Casualty Company of America, from which it has appealed.

At the trial, it was admitted by the garnishee defendant that, at the date of the collision, there was outstanding and effective its policy of insurance No. 741980, to Nalley's, Inc., the named assured, covering the car in question, and that the policy contained an "Additional Assured" provision as follows:

"Insurance under Clauses D and E [Property Damage and Liability] shall be extended to cover, in the same manner and under the same conditions as the named Assured, any person or persons while riding in or legally operating the automobile described herein, and any person, firm or corporation legally responsible

for the operation thereof, provided such use or operation is with the permission of the Named Assured, or, if the Named Assured is an individual, with the permission of an adult member of the Named Assured's household other than a chauffeur or domestic servant; provided further, insurance payable hereunder shall be applied first to the protection of the Named Assured, and the remainder, if any, to the protection of other persons entitled to insurance under the provisions and conditions of this paragraph. . . ."

The contention of the respondents is that, at the time of the accident, Dorothy Roberts was operating the car *with the permission* of Nalley's, Inc., the named assured. The appellant contends to the contrary, and both parties agree that this is the issue and the only issue in the case. The appellant saved its rights with reference thereto at the trial by several motions—one for a nonsuit, one for a directed verdict, and one for judgment notwithstanding the verdict, each of which was denied and upon which rulings error is assigned.

■ The evidence and reasonable inferences from it must be viewed in the light most favorable to the respondents. The situation now is essentially the same as that shown at the trial of the damage actions, as set out in *Mitchell v. Nalley's, Inc.*, 163 Wash. 183, 300 Pac. 526, wherein, in affirming the trial court, it was held, in effect, notwithstanding the verdict to the contrary, that, at the time of the collision, Miss Roberts was not acting in the course of any employment for Nalley's, Inc., and that she did not at that time have express or implied permission to use the car.

Though an employee at the factory of Nalley's, Inc., she was not at work the day of the accident. About ten or ten-thirty o'clock that morning, according to her testimony, she asked Mr. Nalley if she might use his car, then at the factory, to go down in the shopping

district in Tacoma, and that he gave permission for her to do so. Miss Knutsen, an employee at the factory, testified that, just after Miss Roberts left the factory, Mr. Nalley said that he had let Miss Roberts have his car so that she could go down town on some errands and take her mother out. On cross-examination, after admitting that formerly she had testified she was not certain that anything had been said by Mr. Nalley in that conversation about Miss Roberts taking her mother with her, she testified that such statement must have been made by him at that time.

"Q. Something was mentioned about her mother? A. Something about taking her shopping or going shopping. Q. Taking her shopping? A. Going down town on an errand or shopping."

Mr. Nalley testified that, in his conversation with Miss Knutsen, nothing was said about Miss Roberts taking her mother with her shopping.

Miss Knutsen's conversation with Mr. Nalley occurred about ten o'clock, as she testified, just after Miss Roberts left the factory with the car. Of this conversation she further testified:

"Q. But he did tell you specifically when she [Miss Roberts] was to have the car back? A. In a half hour. Q. In a half hour? A. Yes, sir."

Miss Roberts testified that Mr. Nalley said "to be back in half an hour, he wanted to use his car on business." Mr. Nalley testified that, when he let Miss Roberts take the car, he told her she must return it in half an hour, that he had to use it on a business appointment at that time.

Miss Roberts went shopping alone and returned by way of the Bonneville hotel, where she took a girl friend to ride with her out to the factory, arriving there, as she thought, about half an hour or a little more after she took the car to go down town. Mr.

Nalley had already left the factory to fulfill his appointment, and learned nothing further of his car until after the collision that afternoon.

It appears that, on driving back to the factory, instead of leaving the car, Miss Roberts "looked for" Mr. Nalley. She testified:

"Q. Why were you looking for Mr. Nalley? A. Well, I wanted to ask him if I could use the car a little longer. Q. Had you ever at any time used the car before without getting his permission? A. No, I never have."

Leaving a message for Mr. Nalley that she would be back with the car, Miss Roberts, without any permission at that time, or at all, took her girl friend back to the Bonneville hotel and then drove the car to her mother's home, for lunch. While there, she told her mother, according to her mother's testimony, that Mr. Nalley had let her have his car that morning for only half an hour. She then telephoned twice trying to reach Mr. Nalley, without success. Asked why she called for him by telephone from her mother's home, she answered: "Well, I thought I should get permission to use the car." Nevertheless, Miss Roberts took her mother in the car and drove around rather generally toward Point Defiance park, and on returning towards her mother's home about two-thirty o'clock that afternoon, had the collision in question.

In order that the "Additional Assured" part of the insurance contract should be operative, it was necessary, according to its terms, that the operator of the car have the permission of the named assured to use or operate the car. Counsel on both sides have called attention to a number of authorities upon the subject matter of this action, the results of which depended in each case upon the facts peculiar to such case. An analysis of the cases would not, in our opin-

ion, be helpful here. The issue is whether Miss Roberts had the permission of Nalley's, Inc., to use the car as and when the collision occurred. That she did not have such permission, express or implied, to use the car at the place, at the time, and under the circumstances, or for purposes existing at the time of the collision, was clearly established, and must be so held and declared as a matter of law.

Reversed, with directions to the superior court to enter judgment for the appellant.

MAIN, BEALS, HERMAN, and MILLARD, JJ., concur.