In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-2309

VANLINER INSURANCE COMPANY and
SECURITY STORAGE COMPANY INCORPORATED,

*Plaintiffs-Appellees,*

*v.*

ADELL SAMPAT, Individually and as Administratix of
the Estate of RAMDEO SAMPAT, Deceased,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:00 CV 277 JM—**James T. Moody**, *Judge.*

ARGUED NOVEMBER 5, 2002—DECIDED FEBRUARY 25, 2003

Before FLAUM, *Chief Judge*, and CUDAHY and COFFEY,
*Circuit Judges*.

CUDAHY, *Circuit Judge.* On July 7, 1999, while traveling
on Interstate 80 through Northern Indiana, Ramdeo
Sampat was killed in a truck accident. Subsequently,
Security Storage Company (Security Storage) and Van-
liner Insurance Company (Vanliner Insurance) sued Adell
Sampat, Ramdeo's widow, for indemnification on all claims
arising from the accident. Security Storage and Vanliner
Insurance won on summary judgment, and Adell appeals.

Finding the district court's interpretation of the contracts at issue correct, we affirm.

I.

Ramdeo Sampat was a truck driver living in New York State. In 1995, Ramdeo and Security Storage entered into a Contractor Service Operating Agreement (the Contractor Agreement) under which Ramdeo provided transportation for trailers owned by Security Storage. Ramdeo was operating under the Contractor Agreement on July 7, 1999, when, hauling a Security Storage trailer west on I-80 through Indiana, his 1998 Kenworth Conventional Tractor swerved and collided with two other tractor-trailers, sparking a fire that completely burned Ramdeo's and one of the other vehicles. Two lives, including Ramdeo's, were lost.

There were three people in Ramdeo's tractor that afternoon: Ramdeo, Jesse Taylor, Jr. and Madalynne Reynolds. Because Ramdeo and Reynolds perished, the only account we have of what happened on the job that day comes from Taylor, who was driving the tractor at the time of the accident. According to Taylor's affidavit, he was hired by Ramdeo about two days before the accident under a verbal agreement. Taylor in turn brought in Reynolds as an assistant to be paid out of his wages. The Complaint in this suit states that the two of them were brought in as "lumpers" to assist in the loading and the unloading of the trailer. According to Taylor, Ramdeo suddenly became ill on the fatal day and began operating the vehicle erratically, eventually asking Taylor to take over the driving. While Taylor was behind the wheel, Ramdeo suddenly leaned over, obscuring Taylor's view and causing Taylor to swerve into the two tractors parked at the side of the road.

The damage has already been done, and now remains the question of liability. Security Storage held an insurance policy with Vanliner Insurance, under which certain "autos" belonging to Security Storage were covered. The parties agree that the trailer involved in this accident was such a "covered auto" and that the policy provided for liability coverage for anyone using the trailer with Security Storage's permission. Thus, if Ramdeo was using the trailer with permission, Vanliner Insurance may be obligated to pay on any claims against Ramdeo or Security Storage resulting from the accident. On the other hand, the Contractor Agreement provided that Ramdeo, as an independent contractor, would "indemnify and hold [Security Storage] harmless from and against all claims . . . arising directly or indirectly from [Ramdeo's] operations." Thus, under the Contractor Agreement, it would appear that Ramdeo, or his estate, is liable for any claims against himself or Security Storage. It is the relationship between the insurance policy and the Contractor Agreement that is at issue in this lawsuit.

Vanliner Insurance and Security Storage sued Adell Sampat in the Northern District of Indiana[1] for declaratory relief, arguing that they should be indemnified by Adell and Ramdeo's estate for any claims asserted against them. In her defense, Adell invoked the anti-subrogation rule. Under this rule, which is the law in Indiana, an insurance company cannot sue its own insureds for the risk it agreed to insure. Thus, despite the indemnifica-

---

[1] Jurisdiction for this state-law insurance claim is based on diversity of citizenship. 28 U.S.C. § 1332. Vanliner Insurance is an Arizona corporation with its principal place of business in Missouri, while Security Storage is a North Carolina corporation with its principal place of business in North Carolina. Adell Sampat is domiciled in New York, as is the estate of Ramdeo Sampat. The amount in controversy exceeds $75,000.

tion clause of the Contractor Agreement, if Ramdeo was insured under Security Storage's policy with Vanliner Insurance (for using a "covered auto" with permission), actual indemnification by the Sampats would be barred.

The district court ruled that Ramdeo was not insured under Security Storage's policy. To be covered under the policy, a person must have been using the "covered auto" with Security Storage's permission. Security Storage successfully argued that there was no permission here because Ramdeo had handed the operation of the tractor over to Taylor, who did not have a valid commercial driver's license. While the Contractor Agreement allowed Ramdeo to hire others to assist him, it expressly required that "any driver furnished by [Ramdeo] . . . be properly licensed to operate" the equipment. The district court reasoned that, while Indiana follows the so-called "liberal rule" on permissive use, the express restriction in the Contractor Agreement that Ramdeo not use unlicensed drivers revoked Security Storage's permission and precluded coverage of Ramdeo under its insurance policy.

Adell Sampat appeals on two grounds. First, she argues that summary judgment was improper because there was a genuine issue of material fact with respect to whether Ramdeo or Taylor were employees of Security Storage or independent contractors. Second, she argues that, under the "liberal rule" on permissive use, permission is extended to delegated drivers even if they are unlicensed.

## II.

Declaratory judgments are reviewed de novo. *NUCOR Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 578 (7th Cir. 1994). The parties, after applying Indiana choice-of-law rules, appear to agree that Indiana law applies.

A.

Adell Sampat argues that Ramdeo and Taylor were employees and not independent contractors of Security Storage, and that this is a genuine issue of material fact which makes summary judgment improper. We do not reach the question of Indiana law as to Ramdeo's and Taylor's status because, as the plaintiffs point out, Adell fails to demonstrate how the determination of employee status would affect either Ramdeo's coverage under the insurance policy or his liability under the Contractor Agreement. If the dispute is irrelevant to the issues of coverage and indemnification, there was and is no need to resolve it. The defendant has made no argument for the materiality of this question, and has as much as conceded that, regardless of the drivers' status, Ramdeo would have been bound by the terms of the Contractor Agreement, which is the document providing for indemnification. The employee/independent contractor issue, which is not material, could not properly preclude the district court from reaching its determination of the contract law questions, and provides no basis for reversal of the summary judgment.

B.

Indiana's anti-subrogation rule prohibits an insurance company from seeking indemnification from its insureds for the risk that it has agreed to insure. *LeMaster Steel Erectors, Inc. v. Reliance Ins. Co.*, 546 N.E.2d 313 (Ind. Ct. App. 1989); *S. Tippecanoe Sch. Bld'g Corp. v. Shambaugh & Son, Inc.*, 395 N.E.2d 320 (Ind. Ct. App. 1979). Thus, the relevant issue is whether Ramdeo was insured under Security Storage's policy with Vanliner Insurance. Because, under the policy, the class of covered persons includes only those who are using Security Storage's trailers *with permission*, the question becomes whether

Ramdeo had, at the time of the accident, permission to use the trailer. To determine this, we must consider Indiana's rule on permissive use.

Different jurisdictions treat the issue of permissive use quite differently. *See generally* C.T. Dreschler, Annotation, *Automobile Liability Insurance: Permission or Consent to Employee's Use of Car Within Meaning of Omnibus Coverage Clause*, 5 A.L.R.2d 600 (2000). First, there is the "strict" or "conversion" rule. Under this rule, for the use of a car to be "with permission," the permission, express or implied, must have been given with respect to the particular use being made of the car at the time in question. The use in question must be within the scope of the permission given, during the time limits expressed and within the geographical limits contemplated. At the opposite end of the spectrum is the "liberal" rule, under which the user need only have received permission to take possession of the vehicle in the first instance. After that initial grant of permission, any subsequent use while the user remains in possession is considered to be with permission, even though that use may be for a purpose not contemplated by the owner when he parted with possession of the vehicle. This rule is based on the theory that insurance contracts exist in part for the benefit of the public and that it is not in the public interest to permit litigation on the details of a permission and use. The third rule is the "moderate" or "minor deviation" rule. Under this intermediate rule, a slight deviation from the scope of the authority or permission granted is not sufficient to exclude coverage, but a material deviation removes the use from the protection of the owner's implied permission. The measured geographical distance of the deviation from the authorized use, the purpose for which permission was given and other factors are taken into consideration in determining whether the deviation is material.

Indiana follows the "liberal rule" on permissive use. *Warner Trucking, Inc. v. Hall*, 686 N.E.2d 102, 106-07 (Ind. 1997) (affirming the rule as announced by Indiana appellate courts in cases such as *State Farm Mut. Auto. Ins. Co. v. Gonterman*, 637 N.E.2d 811, 813 (Ind. Ct. App. 1994), and by the Seventh Circuit in *Arnold v. State Farm Mut. Auto. Ins. Co.*, 260 F.2d 161 (7th Cir. 1958)). For example, if Security Storage asked one of its contractors to deliver a trailer from New York to Chicago, as long as there were no express restrictions, the contractor could presumably travel by way of San Francisco. His possession of the trailer would presumably be considered to be with permission and be covered under Security Storage's insurance policy under Indiana law. However, as the defendant acknowledges, even under the liberal rule, permission is no longer effective if an express restriction on the permission is violated. *Warner Trucking*, 686 N.E.2d at 107; *Raines v. Auto-Owners Ins. Co.*, 703 N.E.2d 689, 692 (Ind. Ct. App. 1998). Following the above example, this limitation would mean that, if Security Storage had expressly required that the driver take only a direct route between New York and Chicago with no detours, the permission would be revoked when the driver strayed from the course.

Article 5 of the Contractor Agreement required that drivers furnished by Ramdeo be properly licensed; Taylor was not—his license had been suspended. Thus, under *Warner Trucking* and the express restriction limitation to the liberal rule on permissive use, Security Storage's permission was voided by Ramdeo's delegation of the driving to Taylor, and the insurance coverage was revoked. The only argument that Adell provides in response to this conclusion is that, in a pair of cases, the Supreme Court of Washington determined Washington's liberal rule on permissive use to encompass circumstances in which the delegated drivers were unlicensed. *See Wood*

*v. Kok*, 360 P.2d 576, 579 (Wash. 1961); *Odden v. Union Indemnity Co.*, 286 P. 59, 61 (Wash. 1930). Adell asks us to adopt the reasoning of these cases and apply them here in her favor. While we agree that the Washington cases serve as reasonable elaborations of the liberal rule on permissive use, and might be persuasive in some cases arising in a liberal rule jurisdiction, we do not believe they are sufficiently on point factually to be helpful here. *Wood* and *Odden* did not involve a situation where, as here, a user was expressly prohibited from lending a car to unlicensed drivers. In those cases, permission was viewed to be effective, despite the fact that the delegated driver was unlicensed, precisely for the stated reason that there was no such express restriction in the original grant of permission. *See Odden*, 286 P. at 61 ("[The] loan of the automobile . . . was unrestricted as to . . . use of it and as to [borrower's] authority in permitting others to use it."); *Wood*, 360 P.2d at 578 (noting that *Odden* extended permission to the unlicensed driver "in the absence of any restrictions as to the [automobile's] use").

The Contractor Agreement here clearly provided that no unlicensed person should drive the vehicle. Once Ramdeo turned the driving over to Taylor, Ramdeo's permission to use Security Storage's trailer was terminated, as was any coverage he may have had under Security Storage's policy with Vanliner Insurance. *See Gonterman*, 637 N.E.2d at 814. Since Ramdeo was not an insured, Indiana's anti-subrogation rule does not apply, and the indemnification clause of the Contractor Agreement between Security Storage and Ramdeo is effective. Ramdeo, and now Adell, must indemnify Security Storage for any claims successfully brought against it as a result of Ramdeo's trucking operations.

### III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*